# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARTHUR D. FISHER,                      )       No.  EDCV 12-1342 AGR
                                       )
            Plaintiff,                 )
                                       )       **MEMORANDUM OPINION AND ORDER**
      v.                               )
                                       )
CAROLYN W. COLVIN,                     )
Commissioner of Social Security        )
                                       )
            Defendant.                 )
_____)

      Plaintiff filed this action on August 13, 2012.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on August 29 and 30, 2012. (Dkt. Nos. 6, 8.)  On March 21, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for consideration of the January 2011 opinions of Dr. Leung and Dr. Gogatz.

# I.

## PROCEDURAL BACKGROUND

On June 30, 2009, Fisher filed an application for disability insurance benefits, alleging an onset date of February 12, 2008.  Administrative Record ("AR") 10, 138.  The application was denied initially and upon reconsideration.  AR 10, 61, 65.  Fisher requested a hearing before an Administrative Law Judge ("ALJ").  AR 72.  On March 4, 2011, the ALJ conducted a hearing at which Fisher and a vocational expert testified.  AR 24-60.  On April 27, 2011, the ALJ issued a decision denying benefits.  AR 7-19.  On June 20, 2012, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.   The ALJ's Findings

The ALJ found that Fisher met the insured status requirements through September 30, 2013.  AR 12.  Fisher had the severe impairments of degenerative disk disease, mood disorder and post traumatic stress disorder.  *Id.*  He had the residual functional capacity ("RFC") to perform a range of light work.  He could "lift/carry 10 pounds frequently, 20 pounds occasionally; stand, walk and/or sit 6 hours in an 8-hour workday, he would need to alternate positions at one-hour intervals for 1-5 minutes at his workstation.  He could frequently kneel, crouch, crawl and stoop; he could frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds.  He has no limitations on the use of his hands for fine or gross manipulations.  He is limited to simple routine repetitive tasks in a work environment free of fast paced production requirements or assembly line work, his work cannot involve large (over 30 people) crowds or repeated request from the general public.  He can maintain concentration and attention in at least 2-hour blocks of time and respond appropriately to coworkers, supervisor and the general public."  AR 13.

Although Fisher was incapable of performing past relevant work, there were jobs that existed in significant numbers in the national economy that Fisher could perform such as packer/packager, officer helper and electronics worker.  AR 17-19.

3

### C.    Medical Evidence

#### 1.    Mental Limitations

Fisher contends that the ALJ's mental RFC assessment is not supported by substantial evidence.  Fisher argues that the ALJ did not properly consider the opinions and records of his treating nurse practitioner.

The ALJ's mental RFC assessment limited Fisher to simple repetitive tasks in a work environment free of fast paced production requirements or assembly line work. Fisher was precluded from work involving large crowds over 30 people or repeated requests from the general public.  He could maintain concentration and attention in at least two-hour blocks of time and respond appropriately to coworkers, supervisors and the general public.  AR 13.

On October 29, 2009, nurse practitioner Sarmiento stated that Fisher was receiving treatment for post traumatic stress disorder after being involved in a work-related accident in 2008 that resulted in a gruesome death.  AR 339.  Sarmiento indicated Fisher experiences hypervigilance when riding in a car, flashbacks of the accident, nightmares, anxiety and mood swings.  He is on various medications for post traumatic stress disorder as well as pain medication for chronic back pain from the accident.  *Id.*  "I still do not feel Arthur can resume work due to his residual symptoms and the sedation he experiences with some of these medications."  *Id.*

A treating physician's opinion as to the ultimate determination of disability is not binding on an ALJ.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The ALJ gave limited weight to the disability opinion of nurse practitioner Sarmiento[1] and to her GAF scores lower than 50.  AR 16, 339.  The ALJ found that the

---

[1] The ALJ noted that Sarmiento, as a nurse practitioner, was not an acceptable medical source.  AR 16.  In contrast to treatment records, her letter was not reviewed and approved by a physician.

4

objective evidence does not support a finding of disability. AR 16. In addition, the ALJ
stated that it was unknown whether Sarmiento was referring to Fisher's inability to
return to his past relevant work, which is the usual inquiry in workers compensation
cases. *Id.* The ALJ stated it was also unknown whether she relied on Fisher's
subjective complaints rather than objective evidence. In November 2008, she assessed
a GAF score of 49, which improved to 56 by January 2009. However, Sarmiento
assessed a GAF score of 47 one month later in February 2009 even though Fisher
reported feeling better and having fewer nightmares, which is inconsistent with his
condition having deteriorated. *Id.* The ALJ also noted that Sarmiento at one point
prescribed a high dose psychiatric medication at the same time Fisher was taking a
high dose tranquilizer from another physician. The result was a medication overdose
that caused Fisher to discontinue the medication. AR 16; *see* AR 245. The ALJ found
that Sarmiento's conduct was inconsistent with comprehensive questioning needed to
properly evaluate Fisher's condition. AR 16.

The ALJ's reasons are supported by substantial evidence. The objective medical
evidence, including Sarmiento's records, do not support her opinions. Fisher was
involved in the accident at issue in February 2008. AR 241. On October 10, 2008,
Fisher stated he was "paranoid" about driving and became hypervigilant. AR 418.
What bugged him the most was that a person died for no reason. AR 417. He denied
being continuously in a low mood and had no suicidal ideation, psychosis or delusions
AR 417, 419. He was anxious about finances now that he was not working. AR 417.
Fisher described himself as being on an even keel. AR 419. His energy level was 3/10
and felt groggy after taking Seroquel for sleep. AR 420. Fisher's speech and thought
content were normal. His thought process was logical, sequential, coherent and linear.
His affect was euthymic and stable with normal range and intensity. His mood was
within normal limits, and insight and judgment were adequate. He was alert and
oriented. AR 421. Sarmiento assessed a Global Assessment of Functioning (GAF)

score of 48.[2]  AR 422.  Sarmiento wrote that Fisher is "unable to work since pt is a truck driver + unable to drive with meds."  *Id.*  On October 23, 2008, Fisher reported that his sleep was good and not too long anymore since the dose of Seroquel was reduced.  His nightmares continued and he tried to avoid driving as much as possible.  AR 424.  The mental status examination was unchanged except that Fisher was irritable when discussing family matters.  AR 426.

On November 20, 2008, Fisher reported still having nightmares and being uncomfortable driving.  Sarmiento reported that Fisher tolerates meds well and noted no side effects.  Sarmiento assessed a GAF score of 49.  AR 427.  The mental status examination was unchanged except that Sarmiento no longer noted irritability.  AR 429.

On December 17, 2008, Fisher reported that he was put on Cymbalta for back pain.  He was doing "OK," his nightmares decreased and his anxiety was so-so depending upon a trigger of his memory of the accident.  His stressor was family problems.  AR 430.  His mental status examination was unchanged.  AR 432. Sarmiento continued to assess a GAF score of 49.  AR 430.

On January 15, 2009, Fisher reported that he was doing "OK, I guess."  AR 433. Sarmiento assessed a GAF score of 56.[3]  AR 433.  His mental status examination was unchanged except that his insight and judgment were fair.  AR 435.  On January 28, 2009, Sarmiento noted that Fisher was not doing well after changes in his medications. Fisher had been taking Xanax prescribed by another physician and did not realize that Sarmiento was prescribing another medication in the same family.  Fisher was

---

[2]  A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR").

[3]  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  DSM-IV-TR 34.

stumbling and sedated, with his mood up and down.  Sarmiento assessed a GAF score of 45.  AR 437.  Fisher's mental status examination was unchanged except that his affect was drowsy, his mood was low and tired, and his insight and judgment were adequate.  AR 439.

On February 18, 2009, Fisher reported feeling better now that he was off of Xanax and having fewer nightmares.  AR 440.  His family problems continued. Sarmiento assessed a GAF score of 47.  *Id.*  Fisher's mental status examination was unchanged except that he was frustrated by the Xanax prescribed by the other physician.  AR 442.

Sarmiento assessed GAF scores of 51-58 in March 2009-January 2011. Although Fisher initially reported having some nightmares and flashbacks, the main stressors were continuing family problems and buying a home that turned out not to be owned by the bank.  AR 443, 447, 450, 453, 456, 459, 462, 465, 468, 470, 472, 475, 477.  The ALJ gave greater weight to GAF scores indicating moderate limitations as more consistent with the treating records.  AR 16.

Fisher argues that Sarmiento's opinions were consistent with Dr. Cohen's opinion dated February 3, 2009.  AR 240-48.  Dr. Cohen diagnosed post traumatic stress disorder, marital problems and parent child relational problem, nonindustrial.  AR 245. Dr. Cohen noted significant signs of clinical depression, although Fisher is not tearful, has good eye contact, shows no psychomotor agitation or retardation, and does not act in a helpless or hopeless manner.  AR 244.  Fisher shows no signs of psychosis.  His thoughts are logical and appropriate, and his affect is not flat or inappropriate.  *Id.*  Dr. Cohen found Fisher to be fully alert and oriented, and of average intellectual ability.  His memory and concentration were impaired.  *Id.*  Dr. Cohen opined that Fisher was temporarily totally disabled and "[m]ost likely, he will never be able to drive a truck again."  AR 247.  Dr. Cohen expected his condition to improve and anticipated that he could reach permanent and stationary status within eight months, although PTSD cases vary widely.  *Id.*

1    The ALJ gave the workers compensation opinions of temporary total disability

2  (TTD) limited weight and concluded that they do not support a finding of greater work

3  restrictions than the RFC assessment.  AR 15.  The ALJ correctly noted that a TTD

4  opinion does not translate to a disability finding under social security regulations.  The

5  ALJ further noted that the opinions do not consider all of the claimant's records and

6  testimony.  *Id.*  These reasons, as applied to Dr. Cohen's opinions, are supported by

7  substantial evidence.  Dr. Cohen wrote his report after seeing Fisher only a few days

8  after the medication mishap.[4]  The ALJ did not err.

9                    **2.    Physical Limitations**

10    Fisher contends the ALJ failed to mention the opinions of two treating physicians,

11  Dr. Leung and Dr. Gogatz.  The Commissioner does not dispute that the ALJ failed to

12  address these two opinions.  JS at 16-17.

13    In a letter dated January 6, 2011, Dr. Leung wrote that Fisher "has had failed

14  back surgery that resulted in constant pain" and "has been declared totally disabled and

15  is not able to work due to his injured back."  AR 494.  Dr. Leung stated that Fisher is

16  taking oxycodone 80 mg four times per day for pain.  *Id.*

17    In a letter dated January 19, 2011, Dr. Gogatz, a chiropractor, wrote that Fisher

18  "has been disabled due to the injuries he has sustained."  AR 515.  The doctor's

19  certification for a handicap placard dated March 17, 2010 indicates that Fisher has

20

21  _____

22      [4]  The ALJ gave greater weight to the examining psychiatrist, Dr. Bagner.  AR 16-17.
23  Dr. Bagner saw Fisher on August 26, 2009 and diagnosed mood disorder, not otherwise
     specified, and PTSD.  AR 321, 323.  Fisher's speech was coherent but mildly
24  decreased in rate, rhythm and volume.  He had normal thought content and normal
     reality contact.  There was no evidence of hallucinations, paranoia or delusions.  AR
25  323.  Dr. Bagner assessed a GAF score of 70 and anticipated that Fisher should be
     significantly better within six months.  AR 324.  Dr. Bagner opined that Fisher had no
26  limitations interacting with supervisors, peers or the public; zero to mild limitations
     maintaining concentration and attention; mild limitations completing simple tasks and a
27  normal workweek; and mild to moderate limitations handling normal stresses at work
     and completing complex tasks.  *Id.*  The ALJ imposed greater limitations.
28

                                            8

1   multiple root nerve damage and is unable to have surgery according to the

2   neurosurgeon (which appears inconsistent with Dr. Leung's statement).  AR 514.

3        It is unclear whether the ALJ considered the opinions of Dr. Leung and Dr.

4   Gogatz in January 2011.  The ALJ's discussion of the treatment records for Fisher's

5   physical conditions appears to end in 2008.  AR 15.  As discussed above, a treating

6   physician's opinion as to the ultimate determination of disability is not binding on an

7   ALJ.  *McLeod*, 640 F.3d at 885.  On the other hand, an ALJ may not overlook a treating

8   physician's opinion and whether it conflicts with the RFC assessment.  *See Hill v.*

9   *Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028,

10  1038 n.10 (9th Cir. 2007) (ALJ cannot avoid requirements for consideration of treating

11  physician opinion "simply by not mentioning the treating physician's opinion and making

12  findings contrary to it.").  Accordingly, this matter must be remanded for consideration of

13  the January 2011 opinions of Dr. Leung and Dr. Gogatz.

14       **D.   Credibility**

15       "To determine whether a claimant's testimony regarding subjective pain or

16  symptoms is credible, an ALJ must engage in a two-step analysis."  *Id.* at 1035-36.

17       At step one, "the ALJ must determine whether the claimant has presented

18  objective medical evidence of an underlying impairment 'which could reasonably be

19  expected to produce the pain or other symptoms alleged.'"  *Id.* (citations omitted);

20  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*).  The ALJ found that

21  Fisher's medically determinable impairments could reasonably be expected to cause

22  the alleged symptoms.  AR 15.

23       "Second, if the claimant meets this first test, and there is no evidence of

24  malingering, 'the ALJ can reject the claimant's testimony about the severity of her

25  symptoms only by offering specific, clear and convincing reasons for doing so.'"

26  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination,

27  the ALJ 'must specifically identify what testimony is credible and what testimony

28

1  undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

2  2006) (citation omitted).

3       The ALJ concluded that Fisher's statements were not credible to the extent they

4  were inconsistent with his RFC.  AR 15.  Because the ALJ discounted his credibility in

5  part because the treatment records did not support his allegations, the ALJ is free to

6  reconsider Fisher's credibility on remand.

7       **E.    Lay Witness Testimony**

8       Fisher contends the ALJ did not properly consider his wife's statements.

9       "In determining whether a claimant is disabled, an ALJ must consider lay witness

10  testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050,

11  1053 (9th Cir. 2006).  "When an ALJ discounts the testimony of lay witnesses, 'he [or

12  she] must give reasons that are germane to each witness.'"  *Valentine v. Comm'r of*

13  *Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

14       The ALJ discounted the lay witness statements in part because they were not

15  supported by the medical records.  AR 14.  Accordingly, the ALJ is free to reconsider

16  the wife's statements on remand.

17       **F.    Vocational Expert**

18       Fisher contends the ALJ erred in finding that he could perform the jobs of

19  packer/packager, officer helper and electronics worker.  He argues that these jobs,

20  which require reasoning level 2, are inconsistent with the ALJ's RFC assessment that

21  Fisher is limited to simple repetitive tasks.

22       At Step Five, the Commissioner bears the burden of demonstrating there is other

23  work in significant numbers in the national economy the claimant can do.  *Lounsbury v.*

24  *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  If the Commissioner satisfies this

25  burden, the claimant is not disabled and not entitled to disability benefits.  If the

26  Commissioner cannot meet this burden, the claimant is disabled and entitled to

27  disability benefits.  *Id.*

28

1   "There are two ways for the Commissioner to meet the burden of showing that

2   there is other work in 'significant numbers' in the national economy that claimant can

3   do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-

4   Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Id.*

5   "[A]n ALJ may [not] rely on a vocational expert's testimony regarding the

6   requirements of a particular job without first inquiring whether the testimony conflicts

7   with the [DOT]."[5]  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also*

8   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009).  Social

9   Security Ruling ("SSR") 00–4p requires the ALJ to "first determine whether a conflict

10   exists" between the DOT and the vocational expert's testimony, and "then determine

11   whether the [VE's] explanation for the conflict is reasonable and whether a basis exists

12   for relying on the expert rather than the [DOT]."[6]  *Massachi*, 486 F.3d at 1153.

13   In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert

14   testimony which contradicts the DOT, but only insofar as the record contains persuasive

15   evidence to support the deviation."  *Johnson*, 60 F.3d at 1435.  The ALJ's explanation is

16   satisfactory if the ALJ's factual findings support a deviation from the DOT and

17   "persuasive testimony of available job categories" matches "the specific requirements of

18   a designated occupation with the specific abilities and limitations of the claimant."  *Id.* at

19   1435.  Remand may not be necessary if the procedural error is harmless, *i.e.*, when

20   there is no conflict or if the VE provided sufficient support for her conclusion to justify

21   any potential conflicts.  *Massachi*, 486 F.3d at 1154 n.19.

---

24   [5]  The DOT raises a rebuttable presumption as to job classification.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

26   [6]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

1    Under the DOT, the General Educational Development ("GED") Scale measures
2    "those aspects of education (formal and informal) which are required of the worker for
3    satisfactory job performance."  DOT, Appendix C, Section III, 1991 WL 688702 (1991).
4    The GED Scale is composed of three divisions: Reasoning Development, Mathematical
5    Development, and Language Development.  *Id.*  Reasoning Development Levels One
6    requires a person to "[a]pply commonsense understanding to carry out simple one- or
7    two-step instructions. Deal with standardized situations with occasional or no variables
8    in or from these situations encountered on the job."  *Id.*  Reasoning Development Level
9    Two requires a person to "[a]pply commonsense understanding to carry out detailed but
10   uninvolved written or oral instructions. Deal with problems involving a few concrete
11   variables in or from standardized situations."  *Id.*

12   Based on the vocational expert's testimony, the ALJ determined that Fisher could
13   perform the occupations of packer/packager, officer helper and electronics worker, all of
14   which require a reasoning level of 2 according to the DOT.  AR 18; DOT 920.687-166
15   [packer/packager]; DOT 239.567-010 [office helper]; DOT 726.687-010 [electronics
16   worker].

17   The "weight of prevailing authority precludes a finding of any inconsistency
18   between a reasoning level of two and a mere limitation to simple, repetitive tasks or
19   unskilled work."  *Coleman v. Astrue*, 2011 U.S. Dist LEXIS 19892, at *12–*14 (C.D. Cal.
20   2011) (collecting cases); *see Watkins v. Astrue*, 2012 U.S. Dist. LEXIS 5199, at *14-*15
21   (C.D. Cal. Jan. 17, 2012).

22   The ALJ posed a hypothetical that contained the mental limitations in his RFC
23   assessment.  The ALJ may rely on testimony a vocational expert gives in response to a
24   hypothetical that describes "all of the limitations that the ALJ found credible and
25   supported by substantial evidence in the record."  *Bayliss v. Barnhart*, 427 F.3d 1211,
26   1217-18 (9th Cir. 2005).  Fisher's remaining arguments are unsupported.  Fisher has
27   not shown a conflict between the vocational expert's testimony and the DOT.

28

**IV.**

**CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter is remanded for consideration of the January 2011 opinions of Dr. Leung and Dr. Gogatz.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 3, 2013

_____

ALICIA G. ROSENBERG
United States Magistrate Judge